No. 14-6851

# PUBLIC VERSION

———————————————

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————————————

### UNITED STATES OF AMERICA,
*Plaintiff - Appellee,*
v.
### RAYMOND ROGER SURRATT, JR.,
*Defendant - Appellant.*

———————————————

### STEVEN HARRIS GOLDBLATT
*Court-Assigned Amicus Counsel.*

———————————————

**Appeal from the United States District Court
for the Western District of North Carolina**

———————————————

**BRIEF FOR COURT-ASSIGNED *AMICUS CURIAE* IN SUPPORT
OF THE JUDGMENT BELOW**

———————————————

Steven H. Goldblatt
*Director*

Ruthanne M. Deutsch
*Supervising Attorney*

Utsav Gupta
William Hornbeck
Meredith Wood
*Student Counsel*

Georgetown University Law
Center
Appellate Litigation Program
111 F Street, NW, Suite 306
Washington, DC 20001
Tel:  (202) 662-9555

*Assigned as Amicus Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................... iii

COUNTERSTATEMENT OF JURISDICTION ...................................... 1

ISSUES PRESENTED ...................................................... 2

SUPPLEMENTAL STATEMENT OF THE CASE...................................3

   1.  THE PLEA AGREEMENT ..................................................... 3

   2.  THE RULE 11 HEARING ................................................. 5

   3.  SUBSEQUENT REVOCATION OF BOND AND THE PRESENTENCE INVESTIGATION REPORT .............................. 7

   4.  THE SENTENCING HEARING.....................................................7

   5.  THE DIRECT APPEAL ................................................. 8

   6.  THE FIRST SECTION 2255 MOTION ....................................... 10

   7.  *UNITED STATES v. SIMMONS* AND THE PRESENT MOTION................................................................11

SUMMARY OF ARGUMENT ................................................17

ARGUMENT ......................................................23

   I.  SURRATT WAIVED HIS RIGHT TO COLLATERAL REVIEW OF HIS SENTENCE WHEN HE PLED GUILTY AND THAT WAIVER FORECLOSED REVIEW BELOW AND FORECLOSES REVIEW HERE...................................................24

      A.  Surratt Waived His Appeal and Collateral Review Rights. ....25

      B.  Surratt's Appeal Waiver Strips the Court of Jurisdiction. .......27

i

C. Jurisdictional Concerns Aside, as a Prudential Matter the Government's Waiver of the Waiver Is Not Controlling. ......... 33

II. EVEN ASSUMING JURISDICTION, AND IGNORING SURRATT'S WAIVER, SURRATT FAILS TO QUALIFY FOR SECTION 2241 REVIEW ............................................................... 35

A. Only Retroactively-Applicable Intervening Changes in Supreme Court Law Trigger Section 2241 Review. ................ 36

B. Unsettled Law at the Time of Surratt's Conviction Also Precludes Review. ..................................................... 41

C. Surratt is Ineligible for Savings Clause Review Because *Simmons* Does Not Render Him "Actually Innocent." ............ 44

D. The Parties Cannot Avoid Binding Circuit Precedent. ........... 52

III. DENYING REVIEW IN THIS CASE RAISES NO CONSTITUTIONAL CONCERNS ................................................. 59

A. Surratt's Sentence, If Allowed to Stand, Raises No Due Process Concerns .................................................... 60

B. Constitutional Avoidance Is Not an Issue in this Case. ......... 62

C. Judicial Enforcement of Congressionally-Imposed Finality Constraints Does Not Deprive Surratt Of All Remedies. ........ 65

CONCLUSION ................................................................. 68

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ........................ 69

CERTIFICATE OF SERVICE .................................................. 70

# TABLE OF AUTHORITIES

## Cases

*Alleyne v. United States*, 133 S. Ct. 2151 (2013) ................. 15, 52, 53, 54

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998) .................... 15

*Anders v. California*, 386 U.S. 738 (1967) ............................................... 8

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) ......................................... 24

*Begay v. United States*, 553 U.S. 137 (2008) .......................................... 56

*Bousley v. United States*, 523 U.S. 614 (1998) ............................... *passim*

*Brown v. Caraway*, 719 F.3d 583, (7th Cir. 2013) ........................... 55, 56

*Bryant v. Warden*, 738 F.3d 1253 (11th Cir. 2013) ....................... *passim*

*Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010) .............................. 40

*Chapman v. United States*, 500 U.S. 453 (1991) .................................... 62

*Danforth v. Minnesota*, 552 U.S. 264 (2008) .......................................... 66

*Dorsey v. United States*, 132 S. Ct. 2321 (2012) .................................... 11

*Dretke v. Haley*, 541 U.S. 386 (2004) ..................................................... 58

*Engle v. Isaac*, 456 U.S. 107 (1982) ........................................................ 27

*Greenlaw v. United States*, 128 S. Ct. 2559 (2008) ............................... 65

*Harris v. Warden*, 425 F.3d 386 (7th Cir. 2005) ................................... 28

*Herrera v. Collins*, 506 U.S. 390, (1993) .......................................... 66, 67

*Hicks v. Oklahoma*, 447 U.S. 343 (1980) ................................... 16, 60, 61

*In re Davenport*, 147 F.3d 605 (7th Cir. 1998) ...................................... 39

*In re Jones*, 226 F.3d 328 (4th Cir. 2000) ..................................... *passim*

*In re Payne*, 733 F.3d 1027 (10th Cir. 2013).............................................54

*In re Vial*, 115 F.3d 1192 (4th Cir. 1997) (en banc).........................38, 39

*Machibroda v. United States*, 368 U.S. 487 (1962)................................42

*Marrero v. Ives*, 682 F.3d 1190 (9th Cir. 2012).....................................51

*McClesky v. Zant*, 499 U.S. 467 (1991) ...........................................57, 59

*McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013) .......................................46

*Mentavlos v. Anderson*, 249 F.3d 301, (4th Cir. 2001) ...........................55

*Miller v. United States*, 735 F.3d 141 (4th Cir. 2013) ......................47, 48

*Poindexter v. Nash*, 333 F.3d 372 (2d Cir. 2003) .............................51, 52

*Reyes-Requeña v. United States*, 243 F.3d 893, 904 (5th Cir. 2001) ......39

*Rice v. Rivera*, 617 F.3d 802 (4th Cir. 2010).................................. *passim*

*Ring v. Arizona*, 536 U.S. 584 (2002)......................................................57

*S.E.C. v. Pirate Investor LLC*, 580 F.3d 233 (4th Cir. 2009).................62

*Sawyer v. Whitley*, 505 U.S. 333 (1992) .................................................66

*Schlup v. Delo*, 513 U.S. 298 (1995)................................................58, 59

*Schriro v. Summerlin*, 542 U.S. 348 (2004) ......................................49, 57

*Scotts Co. v. United Indus. Corp.*, 315 F.3d 264 (4th Cir. 2002)............55

*Simpson v. United States*, 721 F.3d 875 (7th Cir. 2013) .......................54

*Skipper v. French*, 130 F.3d 603 (4th Cir. 1997)....................................36

*Trenkler v. United States*, 536 F.3d 85 (1st Cir. 2008)...........................51

iv

*Tyler v. Cain*, 533 U.S. 656 (2001) ........................................................ 39

*United States v. Addonizio*, 442 U.S. 178 (1979) .................................... 65

*United States v. Blick*, 408 F.3d 162 (4th Cir. 2005) .................. 29, 31, 32

*United States v. Booker*, 543 U.S. 220 (2005) ........................................ 30

*United States v. Copeland*, 707 F.3d 522 (4th Cir. 2013) ..... 29, 30, 31, 32

*United States v. Harp*, 406 F.3d 242 (4th Cir. 2005) .............. 8, 25, 26, 42

*United States v. Jones*, 758 F.3d 579 (4th Cir. 2014) ........................ 46, 51

*United States v. Linder*, 552 F.3d 391 (4th Cir. 2009) ........................... 33

*United States v. MacCollom*, 426 U.S. 317 (1976) ................................. 62

*United States v. Maybeck*, 23 F.3d 888 (4th Cir. 1994) .................... 49, 50

*United States v. Metzger*, 3 F.3d 756 (4th Cir. 1993) ................. 25, 31, 33

*United States v. Mikalajunas*, 186 F.3d 490 (4th Cir. 1999) ................. 47

*United States v. Pettiford*, 612 F.3d 270 (4th Cir. 2010) ............... *passim*

*United States v. Poindexter*, 492 F.3d 263 (4th Cir. 2007) .................... 31

*United States v. Poole*, 531 F.3d 263 (4th Cir. 2008) ..................... *passim*

*United States v. Redd*, 735 F.3d 88 (2d Cir. 2013) ................................. 54

*United States v. Reyes*, 755 F.3d 210 (3d Cir. 2014) .............................. 54

*United States v. Shipp*, 589 F.3d 1084 (10th Cir. 2009) ......................... 49

*United States v. Simmons*, 649 F.3d 237
  (4th Cir. 2011) (en banc) ........................................................... *passim*

*United States v. Taylor*, 732 F.3d 241 (3d Cir. 2013) ............................. 51

*United States v. Thomas*, 627 F.3d 534 (2010) .......................................38

*United States v. Triestman*, 124 F.3d 361 (2d Cir. 1997) ................62, 64

*United States v. Tyler,* 732 F.3d 241 (3d Cir. 2013) ...............................51

*United States v. Windsor*, 133 S. Ct. 2675, 2688 (2013).........................41

*Welch v. United States*, 604 F.3d 408 (7th Cir. 2010)............................49

*Whiteside v. United States*, 748 F.3d 541 (4th Cir. 2014),
  *reh'g en banc granted*, 2014 WL 3377981 (4th Cir. July 10, 2014) ....46

*Williams v. Warden, Fed. Bureau of Prisons*, 713 F.3d 1332
  (11th Cir. 2013) ...........................................................................28, 51

## Unpublished Cases

*Darden v. Stephens*, 426 F. App'x 173 (4th Cir. 2011) ...........................44

*Farrow v. Revell*, 541 F. App'x 327 (4th Cir. 2013) .........................14, 44

*Lawlor v. United States,* No. 5:06-CR-310-BO, 2012 WL 1745494
  (E.D.N.C. May 16, 2012) .......................................................................40

*Little v. Hamidullah*, 177 F. App'x 375 (4th Cir. 2006) .........................44

*Rogers v. United States*, 561 F. App'x 440 (6th Cir. 2014) ...................54

*United States v. Hoon*, 2014 U.S. App. LEXIS 15408
  (10th Cir. Aug. 12, 2014)......................................................................54

*United States v. Newbold*, 490 F. App'x 614 (4th Cir. 2012),
  *vacated and remanded,* 134 S. Ct. 897 (2014) ....................................48

*United States v. Stewart*, 540 F. App'x 171 (4th Cir. Sept. 27, 2013) ....54

**State Cases**

*Hicks v. State*, No. F-77-751 (Okla. Crim. App. Mar. 8, 1979) ...............61

*Thigpen v. State*, 571 P.2d 467 (Okla. Crim. App. 1977)..................60, 61

**Statutes**

18 U.S.C. § 3553(e) ........................................................................4

18 U.S.C. § 3582(c)(2) ...................................................................10

18 U.S.C. § 922(g) ........................................................................48

18 U.S.C. § 924(c)(1)(A) ................................................................52

21 U.S.C. § 841 ....................................................................*passim*

28 U.S.C. § 1651 ...........................................................................1

28 U.S.C. § 2241 ..................................................................*passim*

28 U.S.C. § 2244 ..........................................................................12

28 U.S.C. § 2255 ..................................................................*passim*

28 U.S.C. § 2255(a) ......................................................................64

28 U.S.C. § 2255(e) ..............................................................*passim*

28 U.S.C. § 2255(f)(3) ...................................................................38

28 U.S.C. § 2255(h)(2) ..............................................................37, 38

Fair Sentencing Act of 2010, Pub. L. No. 111-220,
   124 Stat. 2372 (2010) ...........................................................11, 66

**Other Authorities**

Charlie Savage, *Sentences of 8 Are Commuted in Crack Cases*, N.Y. TIMES, Dec. 19, 2013, at A1 .................................................................. 67

Henry Friendly, *Is Innocence Irrelevant? Collateral Attacks on Criminal Judgments*, 38 U. Chi. L. Rev. 142 (1970) ........................................... 59

## COUNTERSTATEMENT OF JURISDICTION

Petitioner Raymond Roger Surratt, Jr. appeals the denial of his motion for review under 28 U.S.C. § 2241. Although the appeal was a timely filed appeal from a final order, assigned amicus challenges subject-matter jurisdiction of the district court and this Court under 28 U.S.C. § 2255(e). *See infra* Argument Parts I and II. Surratt cannot demonstrate that § 2255 relief was "inadequate or ineffective," § 2255(e), and that provision is a jurisdictional prerequisite to proceeding under 28 U.S.C. §§ 1651 and 2241.

## ISSUES PRESENTED

I. Whether Surratt's voluntary waiver of his appeal and collateral review rights that were included in the terms of his guilty plea foreclosed any judicial consideration of the issues raised below.

II. Whether § 2241 review is unavailable because Surratt fails to satisfy any of the three requirements for such extraordinary review that this Court articulated in *In re Jones*, 226 F.3d 328 (4th Cir. 2000).

III. Whether the absence of a viable claim of actual innocence eliminates any concern that the denial of extraordinary review in this case violates the Constitution.

## SUPPLEMENTAL STATEMENT OF THE CASE

Assigned amicus does not dispute the accuracy of the facts offered by the parties but sets out here additional facts relevant to several arguments, particularly a claim that the court below lacked jurisdiction to consider Surratt's collateral attack on his sentence.

**1.    THE PLEA AGREEMENT**

On February 4, 2005, petitioner Raymond Surratt pled guilty to a single count of conspiracy to distribute cocaine.   JA312.   In the plea agreement, Surratt "waived his right to appeal or collaterally challenge his conviction or sentence except on two grounds not relevant here," and recognized the possibility that his sentence would be a "mandatory term of life imprisonment unless reduced for substantial assistance."  *Id.*

In the plea agreement, the parties stipulated:





JA337.

Surratt agreed that ████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████ JA342.

Surratt also waived most of his rights to contest the conviction or whatever sentence would be imposed, with three specific exceptions the district court recognized as not relevant to the present appeal. JA312. The agreement provided that he only could appeal or collaterally attack:



JA339-40.

**2.    THE RULE 11 HEARING**

Magistrate Judge Carl Horn conducted a Rule 11 hearing on February 4, 2005. JA198. There, Surratt stated that he understood and had voluntarily entered into the plea agreement. JA208-09. When Magistrate Judge Horn asked Surratt if he understood that he had "waived your right to appeal your conviction or your sentence or to contest it in any other post conviction proceeding, with some very narrow exceptions," that "if convicted of this offense, and the government does not make a downward departure motion, you would face a mandatory term of life imprisonment and a fine of up to $8 million," and "that if the sentence is more severe than you expected ... that you will be bound by your plea and will not be able to withdraw it," Surratt responded "Yes, sir." JA201-02, 208.

Magistrate Judge Horn also informed Surratt that "the government's agreeing to your release, Mr. Surratt, and that is I'm sure solely because of your cooperation or offer to cooperate," but "if you go out and you do like you have done many other times when you have been on release from state court, you're probably going to go to prison for the rest of your life." JA211-12.

Most important to this appeal, the parties discussed but did not stipulate to the legal significance of Surratt's three prior North Carolina convictions. JA207-08. Surratt's counsel stated that "we are not stipulating to the information filed on October 18th [2004]" because he had done "a little research on the question of North Carolina convictions of simple possession of cocaine as they would qualify as felonies under the 851 enhancements." JA207. Surratt's counsel clarified that "I don't think the issue is going to come up, ... but I wanted to put that on the record." *Id*. The prosecutor responded that her "851 notice [] lays out three prior convictions. It's my contention that all three are felonies. They were felonies. They still are felonies in this state.... But if they are not felonies, they are not felonies, and he's not facing mandatory life." JA208. Magistrate Judge Horn added that "You're now facing a charge that unless you get a downward departure motion at sentencing, or unless this conviction doesn't qualify, it may or may not – I believe it probably does – but you're facing life in prison." JA212. Surratt was released from custody that day. JA312.

**3. SUBSEQUENT REVOCATION OF BOND AND THE PRESENTENCE INVESTIGATION REPORT**

On October 3, 2005, the Government moved to revoke Surratt's bond. JA163. The Honorable Robert Conrad, United States District Judge, granted this motion on October 12, 2005, as Surratt had "engaged in behavior consistent with drug trafficking and associated with known drug dealers" rather than cooperate with the Government. JA312. █████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████ JA346, 366.

**4. THE SENTENCING HEARING**

On October 31, 2005, Surratt was brought before Judge Conrad for sentencing. JA216. The prosecutor noted that "I agreed to let him out about a year ago so that he could try and cooperate," but that Surratt's "efforts were halfhearted … at best" and "[d]idn't result in any controlled buys or new charges on anybody or new investigations of any targets." JA223. The judge sentenced Surratt to life imprisonment without parole, which the judge described as "brought about in substantial measure by a criminal history that comes home to roost for your client today," and that the judge noted was "required" because of Surratt's "prior criminal

history and his engagement in this drug trafficking and, for whatever reasons, his inability to render substantial assistance." JA222.

In contrast to the Rule 11 hearing, at the sentencing hearing the parties no longer discussed or debated the legal significance of Surratt's prior North Carolina convictions. By the time Surratt was sentenced, however, this Court had decided *United States v. Harp*, 406 F.3d 242 (4th Cir. 2005) (decided May 4, 2005). *Harp* held that to determine whether a crime is "punishable by imprisonment for a term exceeding one year" in North Carolina, a court must assume that a defendant charged under a North Carolina statute had the "worst possible criminal history." *Id*. at 246. All three of Surratt's prior North Carolina convictions qualified as felonies under *Harp*. JA315.

## 5. THE DIRECT APPEAL

Surratt appealed his conviction and sentence, but his counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that there were no meritorious grounds for appeal, while questioning whether Surratt's sentence was reasonable. JA61B. Surratt filed a *pro se* supplemental brief arguing that his counsel had been ineffective, that his plea had not been voluntary, and that the district judge's misstatement

of the applicable Sentencing Guidelines range at the sentencing hearing was prejudicial.  JA61B-61C.  The Government did not file a response. Docket No. [60], No. 05-05187.

This Court affirmed, JA61D, finding that Surratt's plea had been voluntary, that the district judge's misstatement of the applicable Sentencing Guidelines range was harmless error because Surratt was subject to a mandatory sentence under 21 U.S.C. § 841, and that his ineffective assistance of counsel claim had to be raised on collateral review.  JA61C-61D.  Because the Government did not raise Surratt's waiver of his appeal rights (or file a brief at all), the court "decline[d] to enforce the appellate waiver."  JA61B n.2.

This Court rejected Surratt's claim that his plea was involuntary, applying plain error review because Surratt made no attempt to withdraw his plea in district court.  JA61C-61D.  Specifically, this Court found that "Surratt is bound by the statements he made at the plea colloquy, and there is no evidence that his plea was unknowing or involuntary."  JA61C.   Surratt filed a pro se petition for a writ of certiorari, which the Supreme Court denied on May 14, 2007.  JA314.

9

**6.    THE FIRST SECTION 2255 MOTION**

On April 23, 2008, Surratt filed a petition to vacate his sentence pursuant to 28 U.S.C. § 2255 and 18 U.S.C. § 3582(c)(2). JA62. Surratt argued that his counsel had been ineffective for failing to give him all of the information he needed to decide whether to plead guilty, for failing to move to suppress certain evidence, for failing to investigate or present evidence related to his sentencing, for failing to bring a strong appeal, for having a conflict of interest, and for failing to "competently assist, explain, coordinate, and facilitate cooperation with the Government." JA64. Surratt also argued that he was entitled to a sentence reduction due to Sentencing Guidelines amendments to U.S.S.G. § 1B1.10(c). *Id.* He did not challenge the legality of imposing a mandatory life sentence.

The Government did not file a response. Docket No. 3:08-cv-00181. The district court denied Surratt's motion on February 25, 2011, finding that his counsel had not been ineffective and that Sentencing Guidelines amendments could not affect his mandatory sentence of life without parole. JA174, 176. Specifically, the district court noted that Surratt had only made "conclusory statements about what counsel failed to do and [had] not establish[ed] an objective standard against which to

10

measure counsel's performance," a performance which the district court recalled having been "zealous."  JA174.  This Court declined to issue a certificate of appealability for the § 2255 decision.  JA314.

## 7.  *UNITED STATES v. SIMMONS* AND THE PRESENT MOTION

On August 17, 2011, this Court decided *United States v. Simmons*, 649 F.3d 237, 241 (4th Cir. 2011) (en banc), where it  "conclude[d] that *Harp* no longer remains good law" and under which two of Surratt's three North Carolina convictions would not qualify him for a mandatory sentence of life without parole.  If Surratt had been sentenced post-*Simmons*, his criminal record would have only one prior felony conviction, triggering a mandatory minimum of twenty years, with a statutory maximum of life without parole.[1]  21 U.S.C. § 841.

---

[1] The mandatory minimum has since been lowered to ten years under the Fair Sentencing Act of 2010; the maximum sentence remains life without parole.  Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010).   The Fair Sentencing Act's lower penalties do not apply to prisoners like Surratt who were sentenced before 2010.  *Dorsey v. United States*, 132 S. Ct. 2321, 2331 (2012).   The district court stated that Surratt "faced a statutory penalty of ten years to life" because he was "without any qualifying convictions." JA322 n.7.  This was apparently a mistake: as the district court had noted earlier, Surratt conceded that his "one qualifying prior felony drug offense" would "result[] in a mandatory minimum of twenty years." JA315.

On August 15, 2012, Surratt moved in this Court for leave to file a successive § 2255 motion, pursuant to 28 U.S.C. § 2244. JA179. This Court denied his motion on September 13, 2012. JA240. That ruling is not in dispute here.[2]

Surratt filed the present motion to vacate his sentence on August 15, 2012. JA179. Surratt asserted that he was entitled to review under 28 U.S.C. § 2241 because three of his four North Carolina convictions that were used to impose a mandatory minimum of life without parole no longer qualify as predicate convictions under *Simmons*. JA179, 181. Surratt argued that *Simmons* "established a new substantive rule of law" that "appl[ies] retroactively" to cases on collateral review. JA185. He further argued that he was "actually innocent of being a career offender," which allowed him to "overcome procedural default." JA187-88. The Government's position was that review was available to cure "fundamental errors" under § 2241 "when circuit law or Supreme Court holdings foreclosed the prisoner's argument at the time of direct review and an initial collateral attack, but an intervening decision overturned

---

[2] The district court accepted Surratt's concession at oral argument that he is not eligible for § 2255 relief because this Court denied his motion for leave to file. JA311 n.1.

that law." JA246. The Government argued that Surratt's mandatory minimum sentence of life imprisonment without parole is such a "fundamental error." JA263, 266.

On May 16, 2014, the district court denied Surratt's motion. JA311-12.[3] The court applied this Court's decision in *In re Jones*, 226 F.3d 328, 333-34 (4th Cir. 2000) ("*Jones*"), which allows an extraordinary collateral attack under § 2241 only if a prisoner demonstrates that:

> (1) [A]t the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction;
>
> (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and,
>
> (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

The district court held that Surratt "meets the first and third prong" but could not meet *Jones'* second prong "[b]ecause Surratt contests the applicability of his mandatory minimum sentence and not the validity of his conviction." JA319. In so ruling, the district court observed that this Court has "repeatedly acknowledged that its precedent has 'not extended

---

[3] The court first denied Surratt's claims that he was eligible for relief under § 2255 and/or pursuant to a writ of error *coram nobis*. Neither claim is pursued here.

the reach of the savings clause to those petitioners challenging only their sentence.'" *Id.* (quoting *United States v. Poole*, 531 F.3d 263, 267 n.7 (4th Cir. 2008)).

The district court also rejected attempts to limit *Jones* to "*Bailey*-type cases which in fact involve conduct that is no longer considered criminal." JA320 (citing *Farrow v. Revell*, 541 F. App'x 327, 328 (4th Cir. 2013) (construing *Jones* to bar sentencing enhancement claims under the savings clause "actual innocence" threshold). Although *Farrow* is an unpublished decision, the district court concluded it "has strong implications for the issue presented here": namely, that the Fourth Circuit denied a *Simmons* claim brought by an inmate whose "direct appeal and § 2255 motion were decided prior to *Simmons*." JA320. The district court's unwillingness to extend savings clause review was further supported by its recognition that "the [savings clause] remedy is extraordinary" and must be limited to cases of actual innocence to avoid "flood[ing] federal courts in a perpetual tide of § 2241 motions." JA321.

The district court also rejected several other arguments posed by either Surratt or the Government. It observed that Surratt would not be entitled to review under the Eleventh Circuit's test "because his sentence

14

was not in excess of the statutory maximum for his offense." JA321-22 (discussing *Bryant v. Warden*, 738 F.3d 1253, 1283 (11th Cir. 2013)), which allows some non-capital sentencing claims to be raised under the savings clause if the sentence exceeds the statutory maximum).

The district court also rejected the Government's argument that the decision in *Alleyne v. United States*, 133 S. Ct. 2151, 2161 (2013) ("a fact that increases a sentencing floor … forms an essential ingredient of the offense") altered the analysis here. *Alleyne* was distinguishable, in the court's view, as it applied only to the Sixth Amendment definition of what facts must be proven to a jury as a "separate offense." JA324, 326. The court further observed that while *Alleyne* held generally that a fact that increases a statutory minimum sentence is an element of a distinct crime, *Alleyne* also specifically recognized that "the fact of a prior conviction remains an exception to the general rule." JA324 (citing *Alleyne*, 133 S. Ct. at 2160 n.1).

The court explained that even under *Alleyne*, a recidivist enhancement remains a sentencing factor rather than an element of a distinct offense. *Id.* (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 230 (1998) (recidivist status need not be proved to a jury as an

element of an offense)).  The court also recognized that this Court has applied *Almendarez-Torres* repeatedly post- *Simmons* to deny claims that only a jury may find that a defendant has prior convictions.  JA325 & n.11 (citing Fourth Circuit cases).

The district court next addressed the Government's claim, relying upon *Hicks v. Oklahoma*, 447 U.S. 343, 345 (1980), that denying review of Surratt's sentence, post-*Simmons*, would result in "a due process violation in the complete deprivation of statutory sentencing discretion." JA262.  The district court disagreed and distinguished *Hicks*, noting that Hicks "was sentenced ... based on an Oklahoma statute later found to be unconstitutional by the state appellate court in a different case," and "his direct appeal was denied on the basis that he was sentenced within the range of punishment he faced without the mandatory provision." JA326-27.  The Supreme Court found a Due Process violation because on direct appeal "the state arbitrarily deprived him of the opportunity to be resentenced without the mandatory provision in place."  JA327.  By contrast, Surratt's sentence was not only lawful but correct at the time of his direct appeal.  JA313.

Finally, the district court noted that "the Executive Branch holds the power to commute sentences and has signaled its willingness to do so in drug cases with severe sentences," citing to President Obama's recent commutation of the sentences of eight crack cocaine offenders.  JA327 n.13.

## SUMMARY OF ARGUMENT

Both Mr. Surratt and the Government fail to squarely confront the multiple ways that Congress has limited the authority of federal courts to entertain § 2241 petitions filed by federal prisoners who have already exhausted their right of appeal and to litigate a first § 2255 petition. Congress mandates that such an extraordinary additional petition "shall not be entertained … unless it … appears that the remedy by motion is inadequate or ineffective to test the legality of his detention," 28 U.S.C. § 2255(e), a requirement this Court recognizes as jurisdictional, *see Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010).  This "savings clause" allows prisoners to reopen judgments in cases that are otherwise final and beyond review in only the rarest of circumstances.  There are several reasons why Surratt's claim does not qualify for such extraordinary review.

17

**I.**  Mr. Surratt pled guilty, and the terms of the plea included a waiver of his right to appeal or collaterally attack the sentence he is serving now.  This waiver forecloses all collateral review including § 2255 or § 2241 motions.

Neither Mr. Surratt nor the Government see the appeal waiver in the plea agreement as an issue here, because the Government has exercised what it perceives to be its right to waive the appeal waiver and concede the case to Mr. Surratt.  At earlier stages of this case, this argument might have some force.  This Court generally will allow the Government to waive the guilty plea appeal waiver on direct appeal and a first § 2255 petition and it did so when Mr. Surratt filed a direct appeal in this case.  Nevertheless it has always left open the Court's right to enforce the waiver regardless of the Government's position.  Here substantial jurisdictional and prudential reasons compel the Court to enforce Mr. Surratt's appeal waiver sua sponte and dismiss this case for want of subject-matter jurisdiction regardless of the Government's position.

First, § 2255(e) limits federal court authority to reopen otherwise final judgments to situations where a § 2255 habeas petition would not

have provided adequate protection of the prisoner's fundamental rights. Where, as here, that is not the case, Congress has directed that the § 2241 motion "shall not be entertained." As this Court has already held, that command is a jurisdictional limitation that neither the parties nor the Court is free to waive and it renders the Government's "waiver" of the waiver irrelevant in this particular context.

Second, § 2255 constraints aside, this Court has always recognized that it is not bound by the wishes of the parties regarding guilty plea waivers of appeal rights, and that prudential concerns may require sua sponte judicial enforcement of plea waivers. Here, such concerns mandate that the appeal waiver be enforced against a prisoner who bartered away his right to review for substantial consideration, regardless of the position taken by the Government.

**II.** Even if the plea agreement does not decide this case against Mr. Surratt, he fares no better under the three-pronged test this Court established in *In re Jones*, 226 F.3d 328, 333-34 (4th Cir. 2000) to determine whether "savings clause" review is available. Under that test, Mr. Surratt must demonstrate that, 1) settled Supreme Court or circuit law established the legality of his conviction "at the time of conviction;"

19

2) after direct appeal and a first § 2255 motion, "the substantive law changed such that the conduct of which [Surratt] was convicted is deemed not to be criminal;" and 3) "he cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law." *Id.* Mr. Surratt cannot meet *any* of these requirements.

First, at the time of his conviction, which is the date of his guilty plea, the law regarding the proper classification of his North Carolina prior convictions for federal sentencing purposes was not settled. That is why Mr. Surratt expressly preserved the issue for sentencing. While it is true that the law was settled against him at the time of sentencing, under *Jones* the critical date is the date of conviction, and the relevant law was not settled on that date.

This temporal focal point makes sense, because *Jones'* second prong requires actual innocence of the crime of conviction, not merely of a sentence. And Mr. Surratt also fails this prong because, to this day, there has been no change in any substantive law that leaves Mr. Surratt imprisoned for innocent behavior. All that has changed is the procedural law for classifying a state crime as a felony for purposes of federal sentencing. This Court has consistently rejected claims that sentencing

20

error based on mere legal classification of sentencing factors meets any "actual innocence" threshold, and the panel is bound by those decisions here.

Third, and perhaps most important, the § 2255 gatekeeping requirements cannot be read to allow any federal prisoner to use § 2241 until the Supreme Court declares that a statutory right is substantive and may be applied retroactively to cases that are otherwise final. Congress carefully limited a prisoner's right to assert new constitutional rules retroactively to Supreme Court pronouncements and it would make little sense to think that anything less than a Supreme Court pronouncement would suffice for statutory changes in the law. Accordingly, even if *Simmons* could apply retroactively to render Mr. Surratt actually innocent, which it cannot, the parties still cannot invoke a circuit case as a basis for § 2241 review. Until and unless the Supreme Court so holds, neither Surratt nor any other prisoner may invoke § 2241.

III.   Finally, Mr. Surratt poses no substantial claim that denying him habeas review raises constitutional concerns. The Supreme Court and this Court have carefully tailored the applicable rules that apply here to meet any constitutional concerns that might exist and Mr. Surratt does

21

not, in any event, come close to raising viable constitutional claims. The most that can be said is that Mr. Surratt likely would not be serving a life sentence if he were sentenced today. The problem of course is that he was sentenced years ago and Congress has not authorized federal courts to provide a retroactive remedy to him. That ends this appeal.

It bears mention, however, that Mr. Surratt may yet get relief from the sentence he is serving. Both political branches have tools available to address whatever fairness or public policy concerns arise when sentencing factors are reclassified post-conviction. But what the Executive Branch cannot do, is, on a case-by-case basis, confer upon this Court the authority to ignore the will of Congress.

## ARGUMENT

Assigned amicus is not unmindful that, under the rule announced in *Simmons*, Mr. Surratt is serving a mandatory minimum life sentence that he might not be subject to if he were sentenced today. But the equitable remedy he invokes is not an open-ended license for judicial righting of every perceived wrong that arises after a case becomes final. Rather, Congress has imposed limits, a firewall if you will, that constrains the authority of federal courts to reopen criminal cases in all but the most extraordinary circumstances. Mr. Surratt does not come close to breaching that firewall.

First, Mr. Surratt's guilty plea agreement forecloses any post-sentence review of the lawfulness of his sentence. It would be odd indeed to provide him extraordinary review of an issue for which ordinary review, by his own choice, was voluntarily bartered away.

Second, and apart from the waiver problems of his own making, Mr. Surratt's sentencing challenge does not fit within the extremely narrow class of claims that qualify for extraordinary habeas review under § 2241. Only after the Supreme Court makes a change in law retroactive may a prisoner like Mr. Surratt obtain savings clause review. This Court's

23

decision in *Simmons* presents no opportunity for Mr. Surratt to return to court. And even if his motion were not premature, review is available only upon a showing that the new rule renders him actually innocent of the crime for which he was convicted. He makes no such claim.

Thus, if Mr. Surratt deserves relief from his life sentence, it is not available through the judicial review he seeks here. The appeal should be dismissed for want of jurisdiction or affirmed on the merits.

## I.    SURRATT WAIVED HIS RIGHT TO COLLATERAL REVIEW OF HIS SENTENCE WHEN HE PLED GUILTY AND THAT WAIVER FORECLOSED REVIEW BELOW AND FORECLOSES REVIEW HERE.

A critical threshold issue in this case, addressed by neither party, is whether the appeal waiver in Surratt's guilty plea agreement strips the district court and this Court of subject-matter jurisdiction to entertain his claim under 28 U.S.C. § 2241. That the parties have not raised the issue does not end the matter as "courts … have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Even if this Court does not agree that the appeal waiver operates as an absolute jurisdictional bar, there are compelling prudential reasons

for enforcing it here, notwithstanding the Government's willingness to waive the waiver. Prudential concerns of "judicial efficiency, conservation of scarce judicial resources, and orderly and prompt administration of justice," *United States v. Metzger*, 3 F.3d 756, 758 (4th Cir. 1993), weigh heavily against Surratt and prevent this Court from ignoring the fact that he is raising an issue that he knowingly, voluntarily, and strategically bartered away long ago.

## A. Surratt Waived His Appeal and Collateral Review Rights.

It cannot be contested that, as part of his plea agreement, Surratt waived his rights to appeal and collateral review of any challenge to the classification of his prior offenses. *See* JA312. This Court upheld the plea as valid on direct review, finding "no evidence that his plea was unknowing or involuntary." JA61C.

The issue that Surratt now seeks to raise figured prominently in the terms that were negotiated. When Surratt plead guilty to his conviction under § 841(b)(1)(A), the law of the time had not squarely foreclosed the possibility that his prior offenses did not qualify for the sentencing enhancements. In fact, the issue was being actively litigated in this Circuit. *United States v. Harp*, 406 F.3d 242—which conclusively

25

resolved the question whether Surratt's prior convictions constituted predicate offenses—was not decided until May 2005, months *after* Surratt entered into his plea agreement on February 4, 2005. *Id.* at 242; JA312.

At the time of his plea, Surratt was thus aware of the existence of a colorable claim and left open a challenge regarding classification of predicate offenses at sentencing. Notably, Surratt did not stipulate to the qualifying convictions. JA207 ("[W]e are not stipulating to the information filed on October 18th [2004]"). Both parties debated the issue at the Rule 11 Hearing, JA207-08, and the Magistrate Judge, too, acknowledged the uncertain state of the law, JA212 (The Magistrate Judge stated, "You're now facing a charge that…unless this conviction doesn't qualify, it may or may not–I believe it probably does–but you're facing life in prison…"). ██████████████████████

███████████████████████████████████

████████████████████ JA337.

But, in return for his release pending sentencing and the chance to get the sentence reduced by cooperating with the Government, Surratt bargained away any right to raise that issue on appeal or collateral

26

attack. JA312. Surratt thus leveraged the uncertainty regarding his exposure to a mandatory life sentence and gave away the right to challenge such a sentence, if imposed, in return for the opportunity to reduce the sentence through cooperation. Because Surratt waived any right to collateral review *before* the law was settled against him, he is barred by the terms of his plea from seeking savings clause review.[4]

## B.    Surratt's Appeal Waiver Strips the Court of Jurisdiction.

**1.** The savings clause addresses the authority of the court to decide § 2241 habeas positions in imperative, jurisdictional, terms. Such petitions "*shall not be entertained* … unless it … appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e) (emphasis added). This Court and others have recognized that the imperative language used in § 2255(e) poses a jurisdictional limit. *Rice v. Rivera*, 617 F.3d 802, 807-08 (4th Cir. 2010) (failure to satisfy savings clause requirements deprives the district court

---

[4] Even if the law were already settled against Surratt, the plea agreement procedurally bars his claim. "Futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).

of jurisdiction).[5] "Based on the text alone, which speaks in imperative terms of what class of cases the district court has the power to hear, not what the petitioner himself must allege or prove in order to state a claim, we are compelled to conclude that the savings clause is a limitation on jurisdiction." *Williams v. Warden, Fed. Bureau of Prisons*, 713 F.3d 1332, 1338 (11th Cir. 2013), *petition for cert. filed sub nom. Williams v. Hastings*, 82 U.S.L.W. 3614 (U.S. Apr. 8, 2014) (No. 13-1221). Section 2255(e) "impose[s] a subject-matter jurisdictional limit on § 2241 petitions," and reflects Congress's intent to "clearly restrict[] the subject-matter jurisdiction of the federal courts." *Id.* at 1338, 1340 (collecting authority from other circuits).

Accordingly, Surratt's plea waiver strips the Court of savings clause jurisdiction because § 2255 relief on this issue was never available to him.

**2.** Here, the terms of Surratt's guilty plea stripped the district court of authority to consider *any* post-sentence challenge to his sentence. Because of his waiver, Surratt was never entitled to take advantage of

---

[5] *But see Harris v. Warden*, 425 F.3d 386, 388 (7th Cir. 2005). Surratt's Rule 28(j) filing of September 24, 2014 (Doc. 37) concedes that the rule in this Circuit is that § 2255(e)'s "inadequate and ineffective" language serves as a jurisdictional prerequisite to § 2241 relief.

any change in the law after his sentencing. *See Rice*, 617 F.3d at 807. In other words, it was not bad timing or adverse law that prevented Surratt from challenging the legality of his sentence, it was his voluntary relinquishment of his right to appeal and seek collateral review.

This Court has not shied from enforcing such appeal waivers on direct appeal for claims like Surratt's. Thus, in *United States v. Copeland*, 707 F.3d 522 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 126 (2013), after the defendant pled guilty and waived his appeal rights, the district court sentenced him to 216 months' imprisonment and a term of eight years supervised release, applying the rule announced in *Harp* to use two prior North Carolina convictions to enhance his sentence. *Id.* at 526-27. *Simmons* was handed down shortly thereafter*,* and Copeland appealed despite the appeal waiver, arguing that his sentence was rendered unlawful in light of *Simmons*. *Id.* at 526.

This Court enforced Copeland's appeal waiver even though Copeland's sentence should not have been enhanced based on his prior North Carolina convictions. *Id.* at 526; 529-30. In doing so, the Court relied on its prior holding in *United States v. Blick*, 408 F.3d 162, 168 (4th Cir. 2005) (valid appeal waiver precluded direct appeal of sentence

after *United States v. Booker*, 543 U.S. 220 (2005), rendered Sentencing Guidelines non-mandatory). Because Copeland was sentenced "precisely in the matter he anticipated" he "cannot invalidate his appeal waiver now to claim the benefit of subsequently issued case law." *Id.* at 529. "Copeland's claims regarding the application of *Simmons* [fell] within the scope of his valid appeal waiver," so the Court denied relief. *Id.* at 529-30.

So too for Surratt. If the appeal waiver foreclosed direct appeal relief for Copeland, *a fortiori*, it bars collateral review (first, second, and, especially, an extraordinary third attempt under § 2241) for Surratt.

**3.** In light of *Copeland*, Surratt's appeal waiver renders him "unable to obtain relief," (on appeal or collateral review) for his *Simmons* claim. *Jones*, 226 F.3d at 333 ("It is beyond question that § 2255 is not inadequate or ineffective merely because an individual is unable to obtain relief under that provision."). Surratt's plea agreement shows that he understood that he was ceding all rights to appeal his sentence through post-sentence review save for the limited exceptions that the agreement

preserved that are not relevant here.[6]  JA312.  ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████  *See* JA342.  In sum, due to Surratt's own

tactical litigation choices, § 2255 relief is simply unavailable.  Under such

circumstances, Congress has mandated that Surratt's § 2241 petition

"shall not be entertained," § 2255(e).

**4.** There are of course instances, including *Copeland* itself, where

this Court has opted not to sua sponte enforce the waiver, and has

addressed the merits of an appeal, when the Government waives the

appeal waiver.  *Copeland*, 707 F.3d at 530 n.6 ("we will not sua sponte

enforce [the waiver]"); *see also United States v. Poindexter*, 492 F.3d 263,

271 (4th Cir. 2007) (Government can "decline to rely on the appeal waiver

and address the merits"); *Metzger*, 3 F.3d at 757-58 (4th Cir. 1993)

---

[6] In his first § 2255 motion, Surratt limited his claims to a challenge of
the validity of the agreement itself and to the ineffective assistance of
counsel exception provided for in the plea agreement.  JA61B.  There was
no waiver of the waiver issue posed because the issues raised were not
part of the appeal waiver.  *See United States v. Blick*, 408 F.3d 162, 168
(4th Cir. 2005) (waiver enforced only where issue appealed is within
scope of waiver).

(Government failure to vindicate appeal waiver interest constituted "a waiver of the waiver"). An understanding that plea bargains "rest on contractual principles" underpins judicial willingness to allow party consent to trump the bargained-for waiver. *Copeland*, 707 F.3d at 529 (quoting *Blick*, 408 F.3d at 173).

But party consent cannot trump Congressionally-imposed limits on the subject-matter jurisdiction of federal courts. *Rice*, 617 F.3d at 807 (Government's position on jurisdiction "is irrelevant to our resolution of the jurisdictional issue" given "[e]very federal appellate court['s] … special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.") (quoting *Poole*, 531 F.3d at 270). Thus, although the Court has generally allowed the Government to waive the waiver on direct appeal or on a first § 2255 motion, it has never, to assigned amicus' knowledge, addressed the issue in the § 2241 context posed here. In amicus' view, this jurisdictional limit controls. Section 2255(e)'s command that savings clause petitions "shall be entertained" only when collateral relief in the first instance is "inadequate or ineffective," (as opposed to unavailable), is not a faucet to

judicial relief that can be turned on and off by the Government's case-by-case determinations that a valid waiver should not be enforced.

### C. Jurisdictional Concerns Aside, as a Prudential Matter the Government's Waiver of the Waiver Is Not Controlling.

Even if Surratt's appeal waiver does not operate as a jurisdictional bar, compelling prudential reasons dictate that the appeal waiver be enforced here regardless of the Government's litigation position. "[E]ven where the Government failed to raise waiver as a procedural bar, 'unique interests in judicial efficiency, conservation of scarce judicial resources, and orderly and prompt administration of justice' may sometimes support [this Court's] consideration of the waiver as a procedural bar." *United States v. Linder*, 552 F.3d 391, 396 n.2 (4th Cir. 2009) (quoting *Metzger,* 3 F.3d at 758).

Such prudential interests hold sway here. This is now Surratt's "fourth round of litigation, following [] district court proceedings, direct appeal, § 2255 attack, and attempted successive § 2255 attack." JA321. Surratt deliberately surrendered his right to appeal and his first opportunity to collateral relief on any *Simmons* claim for strategic reasons. He should not be entitled to an extraordinary fourth bite at the

33

apple when his appeal waiver operates to bar even a first appeal of the issue (as in *Copeland*).

Allowing Surratt's claim taxes already scarce judicial resources re-litigating issues that should be in repose. And as other petitioners follow suit and attempt to re-litigate their own sentences under what was once the limited gateway to savings clause review (if and when the Government agrees that their claims should proceed), judicial efficiency and the prompt and orderly administration of justice will be diminished, as the courts are consumed by once-barred successive habeas petitions.

The need for consistency of approach across cases likewise counsels against acquiescing to the Government's waiver of the waiver here. Allowing the Government's case-specific litigation choices to determine when savings clause review is available, rather than consistently apply the Court's own binding precedent to all petitioners in accord with what Congress has delineated, injects an unacceptable level of arbitrariness into the process, and frustrates the prompt and orderly administration of justice.

## II. EVEN ASSUMING JURISDICTION, AND IGNORING SURRATT'S WAIVER, SURRATT FAILS TO QUALIFY FOR SECTION 2241 REVIEW.

Even apart from the jurisdictional and prudential obstacles presented by Surratt's guilty plea appeal waiver that foreclose savings clause review, Surratt's claim is also jurisdictionally barred because he cannot satisfy any of the three requirements for savings clause review set forth in this Court's governing precedent, *In re Jones*, 226 F.3d 328, 333-34 (4th Cir. 2000) ("*Jones*"), and therefore is unable to demonstrate that a successive § 2255 petition is "inadequate and ineffective," *Rice*, 617 F.3d at 807.

To obtain review, Surratt must demonstrate that:

(1) [A]t the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction;

(2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; *and*

(3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*Jones,* 226 F.3d at 333-34 (emphasis supplied).

Failing any of the three *Jones* prongs is grounds to deny review, and Surratt fails all of them. Although the district court held that

35

Surratt met *Jones*' first and third prongs,  JA319, that court may be affirmed on alternative grounds, *Skipper v. French*, 130 F.3d 603, 610 (4th Cir. 1997).  Accordingly, assigned amicus ask this Court to reject these aspects of the district court's ruling.

### A. Only Retroactively-Applicable Intervening Changes in Supreme Court Law Trigger Section 2241 Review.

Surratt asks this Court to allow further review under the savings clause whenever a prisoner's "sentence is erroneous in light of retroactive circuit precedent that was unavailable when the petitioner filed his first § 2255 motion."  Surratt Br. at 14.  The Government claims that the savings clause threshold is "satisfied when circuit law or Supreme Court holdings foreclosed the prisoner's argument at the time of direct review and an initial collateral attack, but an intervening decision overturned that law."  Gov't Br. at 18.[7]

---

[7] The Government acknowledges that other circuits require the intervening decision to be from the Supreme Court, but tells the Court that, "at least" here, there is no problem, because the Government agrees with *Simmons*. Gov't Br. at 22 n.2.  In a recent brief in opposition to a petition for certiorari in a case similar to Surratt's, however, the Office of the Solicitor General argues that savings clause claims are only cognizable "when the error is revealed by a retroactively applicable decision of this Court [i.e. the Supreme Court]."  Brief for the Respondent in Opposition at 14, *Williams v. Hastings*, (No. 13-1221) (filed July 30,

Both Surratt and the Government fail to recognize that implicit in this Court's savings clause jurisprudence and the structure of § 2255 itself is the requirement that the "intervening decision," although it may be statutory, must nonetheless be made retroactively applicable by the Supreme Court. This is because Congress requires that second or successive motions must be certified to contain not only "a new rule of constitutional law," but also one that must be "made retroactive to cases on collateral review by the Supreme Court," and "that was previously unavailable." 28 U.S.C. § 2255(h)(2).

This Court's prior decisions compel the conclusion that the previously-unavailable new rule, albeit statutory and not constitutional, must still be made retroactively-applicable by the Supreme Court to invoke the savings clause. In other words, *Jones'* third prong relieves the prisoner of the obligation to satisfy § 2255(h)(2)'s gatekeeping provisions only insofar as "the new rule is not one of constitutional law." 226 F.3d at 334. The other gatekeeping requirements remain intact.

---

2014), 2014 U.S. S. Ct. Briefs LEXIS 2659, at *26. That brief appears to be in tension with the Government's position here.

The facts in *Jones* prove this point. Savings clause review was available to the petitioner in *Jones*, only because the Supreme Court's decision in *Bousley v. United States*, 523 U.S. 614 (1998), had announced that *Bailey* claims could be raised on collateral review. *See* 226 F.3d at 333. Before the Supreme Court's pronouncement in *Bousley*, this Court had held that because *Bailey* claims could not be collaterally raised, § 2255 relief was unavailable.

Thus, *In re Vial*, 115 F.3d 1192, 1195-97 (4th Cir. 1997) (en banc), rejected the petitioner's argument that *Bailey* announced a constitutional rule, but also explained that, even if it did, for purposes of filing a successive § 2255 motion, "a new rule of constitutional law has been 'made retroactive to cases on collateral review by the Supreme Court' within the meaning of § 2255 only" if "the Supreme Court declares the collateral availability of the rule in question, either by explicitly so stating or by applying the rule in a collateral proceeding." *Accord United States v. Thomas*, 627 F.3d 534, 536-37 (2010) (for purposes of the gatekeeping provisions in § 2255(h)(2), the retroactivity determination must be made *only* by the Supreme Court, in contrast to the more open language used in § 2255(f)(3), which permits lower courts to decide

38

retroactivity); *cf. Tyler v. Cain*, 533 U.S. 656 (2001) (interpreting identical language in § 2244(b)(2)(A) to require a Supreme Court pronouncement of retroactivity). To reiterate, if § 2255 relief is unavailable due to the procedural limits Congress place on successive petitions, it cannot be deemed "inadequate and ineffective" for purposes of establishing jurisdiction under the savings clause. *See, e.g., In Re Vial*, 115 F.3d at 1194 n.5; *Rice*, 617 F.3d at 807.

The three circuits to have addressed the question agree. Only a retroactively-applicable Supreme Court decision opens the door to savings clause review. *See Bryant*, 738 F.3d at 1273 (savings clause claim must rely on a "circuit-law busting, retroactively-applicable Supreme Court decision"); *Reyes-Requeña v. United States*, 243 F.3d 893, 904 (5th Cir. 2001) (savings clause applies only to a claim "that is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense"); *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998) ("the change of law has to have been made retroactive by the Supreme Court" to qualify for the savings clause).

39

These courts of appeals are correct. Congress' cabining of the right to second or successive § 2255 motions to only those new constitutional rules that the Supreme Court declares retroactive avoids haphazard application of new rules across circuits and ensures that retroactive collateral relief will be available only when the highest court in the land conclusively establishes that a new rule applies retroactively.[8]

Given these restrictions for § 2255 review of constitutional claims, it would be strange to conclude that Congress would open the door to § 2241 review under a much less exacting standard for non-constitutional rulings. Bearing in mind this statutory structure dictating that § 2241 review be an extraordinary last resort, this Court should make explicit the requirement that the trigger for savings clause review must be a Supreme Court case expressly holding that a non-constitutional ruling is to be applied retroactively. The en banc decision in *Simmons* therefore does not entitle Surratt to proceed under § 2241.

---

[8] The consequences of tying savings clause review to non-Supreme Court determinations of retroactivity are well-illustrated by the fact that district courts in this Circuit were declaring *Simmons* and *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), to be retroactive before *Powell* and *Miller* were decided. *See, e.g., Lawlor v. United States,* No. 5:06-CR-310-BO, 2012 WL 1745494 (E.D.N.C. May 16, 2012).

Finally, the Government's proffered waiver of the issue for this case only, *see* Gov't Br. at 22, n.2, is no more compelling here than it was for its waiver of Surratt's guilty plea appeal waiver. *See supra* Part I, at 24-34. Whether or not a prisoner is entitled to use a circuit court case to invoke the extraordinary remedy of savings clause review that Congress has so strictly circumscribed cannot depend on whether the Government happens to agree with that particular circuit court case. Such a rule—like acceding to the Government's choice of whether to enforce a valid appeal waiver when exercising judicial power to afford extraordinary review—virtually ensures arbitrary and capricious enforcement of the savings clause because the right to review is being determined by the Government, not the court. *Cf. United States v. Windsor*, 133 S. Ct. 2675, 2688 (2013) ("if the Executive's agreement with a plaintiff ... is enough to preclude judicial review, then the Supreme Court's primary role in" saying what the law is "would become only secondary to the President's.").

## B.    Unsettled Law at the Time of Surratt's Conviction Also Precludes Review.

Under *Jones*, Surratt must also demonstrate that, "at the time of his conviction, the law of this circuit or the Supreme Court established

41

the legality of his conviction." 226 F.3d at 333-34. But when Surratt pled guilty, which is the "time of conviction," *see Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A plea of guilty...is itself a conviction."), the law of this Circuit was not settled. As previously discussed, Surratt weighed the issue he now seeks to raise when deciding whether to plead guilty, and strategically bargained away the right to appeal his sentence. When Surratt struck his plea, *Harp* was being litigated, and this Court deemed resolution of the then-live issue regarding the classification of North Carolina convictions for purposes of federal sentencing enhancements sufficiently important to warrant publication of the decision. *Harp*, 406 F.3d 242.

As described in detail in Part I.A, *supra*, at 25-27, at the pertinent time that he entered his plea, the parties were well aware that the law regarding whether or not Surratt's predicate North Carolina convictions qualified as felony drug offenses under 21 U.S.C. § 841 was arguable. As Surratt conceded before the district court, he "specifically declined to stipulate to the priors and their legal status as felonies..." JA180; JA207; the Magistrate Judge recognized the uncertain state of the law during the Rule 11 Hearing, stating: "You're now facing a charge that...unless

42

this conviction doesn't qualify, it may or may not–I believe it probably does–but you're facing life in prison…" JA212; ███████████████

████████████████████████████████████████████

████████████████████████████████ JA337.

*Jones* establishes that savings clause review is unavailable if the law is unsettled is "at the time of [a prisoner's] conviction." 226 F.3d at 333. As evidenced by Surratt's ability to bargain away his appeal and collateral review rights in exchange for immediate release and the opportunity to try to gain a substantial assistance downward departure, Surratt was leveraging the fact that the law was unsettled "at the time of his conviction." *Id.* He gave up a known right in return for consideration from the Government, aware that the court would ultimately decide what sentence to impose and that there would be no right of further review of the legality of that sentence. Where Surratt benefitted from this unsettled state of the law in striking a favorable plea, there can be no extraordinary review under the savings clause simply because the law is ultimately settled in the prisoner's favor.

43

### C. Surratt is Ineligible for Savings Clause Review Because *Simmons* Does Not Render Him "Actually Innocent."

This Court has repeatedly "confined the § 2255 savings clause to instances of actual innocence of the underlying offense of conviction," *Darden v. Stephens*, 426 F. App'x 173, 174 (4th Cir. 2011). *See also, e.g., Poole*, 531 F.3d at 267 n.7 ("Fourth Circuit precedent has likewise not extended the reach of the savings clause to those petitioners challenging only their sentence."); *Farrow*, 541 F. App'x at 328 (denying § 2241 petition where the petitioner challenged his armed career criminal status and stating that the savings clause only preserves claims in which the petitioner claims actual innocence of convictions and not just innocence of a sentencing factor); *Little v. Hamidullah*, 177 F. App'x 375, 375-76 (4th Cir. 2006) (denying § 2241 petition where petitioner claimed he was actually innocent of being a career offender because he did not meet the test in *Jones*).

The Government and Surratt implicitly concede that *Jones* articulated an actual innocence requirement for savings clause review, but argue that actual innocence was required there only because the particular claim in that case—a *Bailey* error—was a claim of actual

44

innocence. Gov't Br. at 23; Surratt Br. at 24-26. Both parties have things backwards. It is precisely because the *Bailey* error meant that the "conduct of which the prisoner was convicted is deemed not to be criminal," 226 F.3d at 334, that this Court allowed the § 2241 petition to proceed. The question posed here is whether this hard-and-fast rule announced in *Jones* should be relaxed, not whether it can be ignored.

Even if the panel could extend *Jones* (which it cannot do), Surratt's argument that he is actually factually innocent of the "two-time recidivist offense" because "only one of his prior convictions qualifies as a 'felony drug offense' under § 841," Surratt Br. at 27-29, must be rejected. The Government distances itself from this argument but nevertheless urges the Court to conclude that it may consider sentencing errors that would be otherwise barred from collateral review if such errors amount to a "fundamental defect that resulted in a complete miscarriage of justice." Gov't Br. at 43. This argument fares no better under this Circuit's precedent

In *United States v. Pettiford*, 612 F.3d 270, 283-84 (4th Cir. 2010), this Court held that an actual innocence claim to a recidivist-enhanced non-capital sentence (like Surratt's) is viable *only* where the "defendant

clearly showed that he had not committed the crime on which the calculation of his sentence was based." The *Pettiford* court also explicitly confirmed that this analysis holds even when the recidivist enhancement is drawn from a statute, rather than the Sentencing Guidelines. *Id.* at 283 n.11. Similarly, *United States v. Jones*, 758 F.3d 579, 586 (4th Cir. 2014) ("*Jones 2014*") held that the actual innocence/miscarriage of justice exception to statutory bars on habeas relief announced in *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013) must be read narrowly and "does not extend to cases in which a movant asserts actual innocence of his sentence, rather than of his crime of conviction."[9]

Drawing the line at actual factual innocence of the crime of conviction is nothing new. As the Supreme Court has stated, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. This Court has long recognized that, in the

---

[9] At the oral argument in *Whiteside v. United States*, 748 F.3d 541 (4th Cir. 2014) *reh'g en banc granted* 2014 WL 3377981 (4th Cir. July 10, 2014), the Government noted that the Court has yet to recognize that an erroneously imposed mandatory minimum sentence is a fundamental miscarriage of justice. Oral Argument at 47:01, *Whiteside v. United States*, No. 13-7152 (4th Cir. argued Sept. 18, 2014), *available at* http://coop.ca4.uscourts.gov/OAarchive/mp3/13-7152-20140918.mp3. Assigned amicus reads both *Pettiford* and *Jones 2014* to reject this proposition.

context of habeas sentencing challenges, a petitioner may "establish actual innocence, or actual factual innocence of the offense of conviction," sufficient to warrant exceptions to judge-made procedural default rules, only when he demonstrates that (in language mirroring *Jones'* second prong) "he did not commit the crime of which he was convicted." *United States v. Mikalajunas*, 186 F.3d 490, 495 (4th Cir. 1999) (declining to extend actual innocence or miscarriage of justice exceptions to claim of Guidelines miscalculation). A showing that the "petitioner is legally, but not factually, innocent," *id.* at 494, or that the there is a change in the "legal classification of the predicate crimes," *Pettiford*, 612 F.3d at 284, is simply not enough, and it never has been.

Because Surratt's petition reduces to a claim that retroactive-application of *Simmons* demonstrates error only in the "legal classification of [his] predicate crimes," 612 F.3d at 284, he falls far short of the actual factual innocence standard that *Jones* requires.

Even the one case that applies *Simmons* retroactively illustrates the limitation that *Pettiford* poses here. Retroactive *Simmons* relief is available only in instances where the petitioner demonstrates actual factual innocence of an underlying crime of conviction. *Miller v. United*

47

*States*, 735 F.3d 141 (4th Cir. 2013).[10]  Miller had been convicted of violating 18 U.S.C. § 922(g)(1)—possession of a firearm *by a convicted felon*, where being a "convicted felon" was itself an element of the federal offense (not a sentencing enhancement).  *Id.* at 142.  Under the new rule announced in *Simmons*, once his predicate convictions were reevaluated, Miller was not a "convicted felon," and therefore he was being held in custody for a crime that he had not committed.  *See id.* at 145; 18 U.S.C. § 922(g).  Because Miller was actually factually innocent of the crime for which he was incarcerated, he was therefore eligible for retroactive relief under § 2255.

The Government recognizes that *Miller*, in contrast to Surratt's case, "involved a claim of actual innocence."  Gov't Br. at 13.  In arguing for an expansion of *Jones'* actual innocence requirement, however, the Government insists that *Miller's* same retroactivity analysis applies

---

[10] Although it need not reach the issue to decide this case, the Court will address the limits of *Miller* when considering *United States v. Newbold*, 490 F. App'x 614 (4th Cir. 2012), *vacated and remanded,* 134 S. Ct. 897 (2014) and remanded for reconsideration in light of *Miller* and pending briefing on remand).  *Newbold* involves a prisoner's claim under § 2255 that, in light of *Simmons*, his predicate convictions no longer qualified him as an armed career criminal under the Armed Career Criminal Act.  *Id.* at 615.  It held that *Simmons* is a procedural rule that does not operate retroactively to afford the petitioner habeas relief.  *Id.*

"when a prior conviction was used to justify a sentence for which the defendant is legally ineligible." *Id.* But *Miller* itself recognized that *Simmons* could operate retroactively only if it created a "significant risk that a defendant stands convicted of an 'act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." *Id.* at 145 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004) and *Bousley*, 523 U.S. at 620). Surratt cannot meet these thresholds because his conviction and sentence remain lawful after *Simmons*, and *Simmons* does not apply retroactively to his claim.[11]

Similarly, in *United States v. Maybeck*, 23 F.3d 888 (4th Cir. 1994), this Court allowed a procedurally-defaulted claim of "actual innocence" of an enhanced sentence to proceed under § 2255. But the circumstances were exceptional—Maybeck had never committed armed burglary, the prior offense on which his enhanced sentence was based. *Id.* at 893-94.

---

[11] The Government cites no case from this Court or the Supreme Court to support its view that *Simmons* can be applied retroactively here under § 2241. Both *United States v. Shipp*, 589 F.3d 1084 (10th Cir. 2009) and *Welch v. United States*, 604 F.3d 408 (7th Cir. 2010), cited in Gov't Br. at 13-14, involved prisoners' *first* § 2255 motions in which the court applied *Supreme Court* precedent retroactively. Moreover, in both cases, given the intervening Supreme Court precedent, the sentence imposed was in excess of the statutory maximum authorized by Congress. *Shipp*, 589 F.3d at 1091; *Welch*, 604 F.3d at 414-15.

*Pettiford* limited *Maybeck* to its facts, recognizing that the prisoner was allowed to proceed on his defaulted claim there only because he was able to show that he was actually factually innocent of one of the underlying convictions. *Pettiford*, 612 F.3d at 284 ("There is no dispute … that [the defendant] was innocent of one of the convictions used to determine that he was a career offender and he was improperly sentenced as such.") (quoting *Maybeck*, 23 F.3d at 894).

Because Surratt makes no claim to actual innocence, and *Simmons* operates here only to legally reclassify some of Surratt's predicate crimes, it cannot serve as a retroactively-applicable substantive rule that renders him actually innocent either of an element of his offense (as in *Miller* or *Jones*) or of one of his predicate crimes (as in *Maybeck*). Rather, Surratt claims only that his state crimes were misclassified, and under this Court's precedents, that is not enough to authorize savings clause review.

As for the Government's claim that all miscarriages of justice in sentencing should be cognizable under the savings clause, this Court's recent decision in *Jones 2014* makes abundantly clear that only a claim of actual factual innocence of a crime of conviction amounts to a miscarriage of justice sufficient to overcome the Congressionally-drawn

limits to habeas relief—there, § 2255(f)(4)'s limitations period, here, § 2255(e)'s saving clause—a claim of innocence of a sentence is simply not enough.[12] This is because "innocence of a conviction implicates the notion that a person has been incarcerated for a crime he did not commit, whereas a sentencing error does not at all implicate guilt." *Jones 2014*, 758 F.3d at 584. This Circuit's rule is supported by the weight of circuit authority.[13]

---

[12] As *Pettiford* recognized, *Maybeck* allowed a claim of actual innocence of a sentence based on a recidivist enhancement only when it was clear that one of the underlying crimes of conviction had never occurred. 612 F.3d at 284. In *Jones 2014*, although the Florida prior convictions were vacated, it is unclear why. 758 F.3d at 581. The fact that habeas covers claims of unlawful detention (not unlawful conviction), as the parties note, Surratt Br. at 15-16, 22; Gov't Br. at 20-21, does not change the analysis.

[13] *United States v. Tyler,* 732 F.3d 241, 246 (3d Cir. 2013) (adopting the standard for actual innocence articulated in *Bousley* for purposes of a § 2241 motion); *Williams*, 713 F.3d at 1346 (stating that the petitioner, in arguing that one of his previous convictions should not have been considered a violent felony for purposes of sentencing, was asserting only legal innocence, which is not cognizable as a claim of actual innocence under § 2241); *Marrero v. Ives*, 682 F.3d 1190, 1193 (9th Cir. 2012) ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency.") (quoting *Bousley*, 523 U.S. at 623); *Trenkler v. United States*, 536 F.3d 85, 99 (1st Cir. 2008) (explaining that petitioner's savings clause claim was procedural and did not assert that he was actually innocent of the crimes for which he was indicted, convicted, and sentenced); *Poindexter v. Nash*, 333 F.3d 372, 382 (2d Cir. 2003) ("[Petitioner's] claim that the three crimes should have been treated as

Under this precedent, Surratt has no claim that his conduct—both the conduct giving rise to his conviction under § 841(b)(1)(A) and to his two prior convictions which increased his mandatory minimum sentences—is no longer criminal.

### D.    The Parties Cannot Avoid Binding Circuit Precedent.

**1.** Surratt and the Government place undue reliance on *Alleyne v. United States*, 133 S. Ct. 2151 (2013), as somehow changing the analysis here.  Surratt Br. at 27-30; Gov't Br. at 25-27.   *Alleyne*, which applied the *Apprendi* line of cases and concerned the burden of proof for offense elements *other than* recidivist enhancements, is wholly inapposite here.

In *Alleyne*, the Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is an element of the crime that must be submitted to the jury and proved beyond a reasonable doubt. 133 S. Ct. at 2155.  The prisoner Alleyne was convicted by a jury of using or carrying a firearm in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A), which carried a mandatory minimum of five years.  *Id.* at 2155-56.  The judge, not the jury, found that he had also brandished the

---

one crime [for purposes of calculating his sentence] is not cognizable as a claim of actual innocence.").

52

weapon, and sentenced him to the mandatory minimum of seven years, rather than the mandatory five-year sentence that would have applied for the conduct of which the jury had convicted him. *Id*. Because Alleyne was sentenced on the basis of a fact—that he had brandished a weapon— that was not proved beyond a reasonable doubt, the Court concluded that his Sixth Amendment right was violated. *Id.* at 2156.

*Alleyne* is of no aid to Surratt. First, *Alleyne* does not involve establishing an actual innocence (or any other) claim to collateral relief. Rather, as the parties themselves recognize, the *Apprendi*-based holding concerns a criminal defendant's Sixth Amendment right to have a jury determine guilt and the burden of proof necessary to sustain a conviction. *Id.* at 2161; *see also* Gov't Br. at 25 n.4 (recognizing that *Alleyne* is an extension of *Apprendi*). And even in that trial context, critically here, while holding generally that the facts necessary to establish a statutory minimum sentence must be proved to a jury, *Alleyne* took pains to note that sentencing enhancements based on the "fact of a prior conviction" were a "narrow exception to this general rule," leaving the rule announced in *Almendarez-Torres* intact. 133 S. Ct. at 2160 n.1. The Government concedes that *Alleyne* itself creates a "narrow exception" to

its holding and does not alter the fact that recidivism is not an element of the crime.  Gov't Br. at 25-26 n.4.

Lastly, any doubt that *Alleyne* could somehow operate to render Surratt actually innocent of a crime of conviction is readily dispelled by the fact that *Alleyne* itself is not retroactively applicable to cases on collateral review.  This circuit, like every circuit court to have considered its application, has held that *Alleyne* is not retroactive.  *See United States v. Stewart*, 540 F. App'x 171, 172 n.* (4th Cir. Sept. 27, 2013) *("Alleyne* has not been made retroactively applicable to cases on collateral review.")[14]  In sum, *Alleyne*, a procedural Sixth Amendment rule that does not apply to recidivist sentencing enhancements like Surratt's, and is inapplicable on collateral review, is incapable of transforming Surratt's claim of legal insufficiency into one of actual factual innocence.

**2.**   Both parties also suggest that Surratt would prevail under alternative approaches adopted by other circuits.  But this panel is bound by Fourth Circuit law, not the law from other circuits.  And in any event,

---

[14] *See also United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014); *United States v. Redd*, 735 F.3d 88, 92 (2d Cir. 2013); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013); *In re Payne*, 733 F.3d 1027 (10th Cir. 2013); *United States v. Hoon*, 2014 U.S. App. LEXIS 15408 (10th Cir. Aug. 12, 2014); *Rogers v. United States*, 561 F. App'x 440 (6th Cir. 2014).

54

Surratt would not be entitled to relief even under the more expansive tests adopted elsewhere.

The Government proposes that the Court adopt the Eleventh Circuit's test from *Bryant*, 738 F.3d at 1263, under which claims involving a "fundamental sentencing error" would be cognizable. *See* Gov't Br. at 20. Surratt urges adoption of the Seventh Circuit's test in *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013), affording § 2241 relief upon demonstrating that error in sentencing short of actual innocence constitutes a "miscarriage of justice," Surratt Br. at 23.

This panel, however, lacks the power to overrule *Jones*—as well as *Pettiford* and *Jones 2014*—and apply an entirely new test. Such power is reserved to the full court sitting en banc or to the Supreme Court. *See, e.g., Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271 n.2 (4th Cir. 2002) ("Of course, 'a panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court. Only the Supreme Court or this court sitting en banc can do that.'") (quoting *Mentavlos v. Anderson*, 249 F.3d 301, 312 n.4 (4th Cir. 2001)).

What's more, because Surratt's life sentence is within the statutory maximum, he would not be entitled to relief under either of the proffered

rules.  Although the Eleventh Circuit in *Bryant* allowed a claim of actual innocence of a non-capital sentence to proceed (based on a retroactively-applicable Supreme Court precedent), the court limited its holding to sentences above the statutory maximum because "the need to correct a sentence above the authorized statutory maximum penalty weighs significantly heavier against finality interests than the need to amend a within-statutory-maximum sentence that simply might have been lower but for an erroneous guidelines application."  738 F.3d at 1283.  And the Seventh Circuit found a "miscarriage of justice" in *Brown*, 719 F.3d at 586, only where Brown's sentence under the then-mandatory Guidelines range exceeded the maximum sentence that he was legally eligible to receive after the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008).  Whether before or after *Simmons*, Surratt's sentence has always been within the applicable statutory range and does not qualify as a miscarriage of justice under even the Seventh Circuit's test.

There is also good reason to reject the invitation to broadly open claims of sentencing error, no matter how egregious, to extraordinary habeas review.  At bottom, both the Government and Surratt beg the question whether Surratt has in fact articulated a claim that his life

56

sentence is a "miscarriage of justice."  Miscarriage of justice principles must have context, and where *Jones* and this Court's later decisions in *Jones 2014* and *Pettiford* limit the "miscarriage of justice" exceptions for procedural default and § 2241 relief to actual factual innocence, Surratt cannot claim § 2241 relief based on anything less. *See McClesky v. Zant*, 499 U.S. 467, 494 (1991) ("These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.  We have described this class of cases as implicating a fundamental miscarriage of justice.").  To assigned amicus' knowledge, no court has ever extended the fundamental miscarriage of justice exception to include sentences involving an erroneously imposed mandatory minimum where the sentence was still within the statutory maximum.

The Government's contention that an erroneously applied mandatory minimum constitutes a "fundamental defect" overlooks the fact that even habeas review of an erroneously imposed capital sentence is sometimes foreclosed.  *See, e.g., Schriro*, 542 U.S. at 358 (holding that the rule announced in *Ring v. Arizona*, 536 U.S. 584 (2002), that Arizona's capital sentencing scheme violated the Sixth Amendment right

to a jury trial, did not apply retroactively to cases already final on direct review). Where the Supreme Court has never expressly approved of the actual innocence exception in the context of non-capital sentencing, *see Dretke v. Haley*, 541 U.S. 386, 393-94 (2004) (declining to decide whether the actual innocence exception applies in the context of a non-capital sentencing error), the panel here cannot carve out yet another exception to the limitations created by Congress.

The narrow exception that this Court and others have recognized—that people who are actually factually innocent of a crime cannot be foreclosed review despite Congress' wishes—is decidedly not what Surratt is claiming. At most, Surratt has a legal error that is not cognizable under § 2255 or § 2241. And his non-cognizable claims of legal innocence have also been waived since the day he pled guilty.

Ultimately, neither Surratt nor the Government have come to grips with fundamental principles of finality in play here: "To ensure that the fundamental miscarriage of justice exception would remain rare and would only be applied in the extraordinary case, while at the same time ensuring that the exception would extend relief to those who were truly deserving," the Supreme Court has "explicitly tied the miscarriage of

58

justice exception to the petitioner's innocence." *Schlup v. Delo*, 513 U.S. 298, 321 (1995) (internal quotations omitted). Requiring claims of actual innocence in collateral attacks helps "prevent abuse by prisoners, a waste of the precious and limited resources available for the criminal process, and public disrespect for the judgments of criminal courts." Henry Friendly, *Is Innocence Irrelevant? Collateral Attacks on Criminal Judgments*, 38 U. Chi. L. Rev. 142 (1970). If the parties' views were accepted, on the other hand, "there would be no end to collateral attacks on convictions and sentences." *Bryant*, 738 F.3d at 1268 (internal quotations omitted). Such an expansion of § 2241 relief would jeopardize the finality interests at stake in habeas review and would impose undue costs on the judicial system, including "a lack of confidence about the possibilities of justice." *McClesky*, 499 U.S. at 492.

## III. DENYING REVIEW IN THIS CASE RAISES NO CONSTITUTIONAL CONCERNS.

Surratt and his amicus, the National Association of Criminal Defense Lawyers (NACDL), argue that this Court must construe the savings clause in § 2255 to allow recourse to § 2241 here because to do otherwise would raise "grave constitutional issues" under the Due Process Clause, the Equal Protection Clause, and the Suspension Clause,

Surratt Br. at 33-38, and would "encroach[] upon the Separation of Powers," Amicus Br. ("NACDL Br.") at 4-15. The Government agrees that Surratt's continuing mandatory life sentence "implicates due process and separation-of-powers concerns," but disputes that "a failure to recognize this error would amount to a suspension of the writ of habeas corpus" or that "the error implicates equal protection." Gov't Br. at 42 n.6. None of these constitutional arguments has merit.

## A.   Surratt's Sentence, If Allowed to Stand, Raises No Due Process Concerns.

Surratt, NACDL, and the Government all claim that allowing Surratt's sentence to stand violates *Hicks v. Oklahoma*, 447 U.S. 343 (1980). *Hicks*, however, is a direct appeal case that provides no support for Surratt here, as the due process rights that were implicated there would not be applied retroactively on collateral review.

In *Hicks*, a jury was told that if they found Hicks guilty, they "shall assess [the] punishment at 40 years imprisonment" under Oklahoma's "habitual offender statute." *Hicks*, 447 U.S. at 344-45. The jury therefore sentenced Hicks to the mandatory forty years, and Hicks appealed. While the appeal was pending, the mandatory sentence provision was ruled unconstitutional. *Id.* at 345 (citing *Thigpen v. State*, 571 P.2d 467

60

(Okla. Crim. App. 1977)).  That decision applied to Hicks' direct appeal, but rather than vacate Hicks' illegal mandatory sentence, the court affirmed because his forty-year sentence was within the statute's authorized range.  *Id.* (citing *Hicks v. State*, No. F-77-751 (Okla. Crim. App. Mar. 8, 1979)) ("We must find however, that the defendant was not prejudiced by the use of this statute in that the sentence imposed is within the range of punishment authorized by [the statute.]").

The United States Supreme Court granted certiorari on direct review and reversed because the failure to remand for resentencing "deprived [Hicks] of due process of law."  447 U.S. at 345.  The Court reasoned that because Oklahoma had "provided for the imposition of criminal punishment in the discretion of the trial jury," it violated due process to deprive the defendant of his "substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion."  *Id.* at 346.

*Hicks* is of no help to Surratt.  Surratt seeks collateral review and the retroactive application of law to an issue that he has waived in several different ways.  Hicks, by contrast, raised a preserved issue on

61

direct review and was denied relief under the law that applied to his case. As "the Due Process Clause of the Fifth Amendment ... certainly does not establish any right to collaterally attack a final judgment of conviction," *United States v. Triestman*, 124 F.3d 361, 379 n.22 (2d Cir. 1997) (quoting *United States v. MacCollom*, 426 U.S. 317, 323 (1976) (plurality opinion), the Due Process Clause provides no basis to collaterally attack a sentence.

### B.     Constitutional Avoidance Is Not an Issue in this Case.

Surratt and NACDL (but not the Government) invoke the constitutional avoidance canon in support of expanding § 2241 review to sentencing claims.  Surratt Br. at 33-38; NACDL Br. at 5-16.  The canon has no application here because there are neither any constitutional issues to avoid nor are there any plausible alternative readings of § 2255 that could be adopted to avoid them.  The constitutional avoidance canon "is a tool for choosing between competing plausible interpretations of a statutory text," *S.E.C. v. Pirate Investor LLC*, 580 F.3d 233, 253 (4th Cir. 2009); it is "not a license for the judiciary to rewrite language enacted by the legislature," *Chapman v. United States*, 500 U.S. 453, 464 (1991).

First, there are no constitutional questions to avoid. Surratt does little more than give the court a laundry list of one paragraph constitutional concerns. *See* Surratt Br. at 33-38. As noted above, absent a showing of actual innocence, no due process concerns arise. *See supra* at Part III.A., at 60-62. Nor are any separation of powers concerns implicated, because there is no dispute that the life sentence that Surratt is serving ***is*** authorized by Congress. 21 U.S.C. § 841(b)(1)(A)(viii) ("such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment").

Surratt also hints at Equal Protection and Suspension Clause arguments, but only in support of constitutional avoidance, not as freestanding constitutional claims. Such claims were waived below, and are at any rate meritless.[15] Surratt's Equal Protection argument relies solely on a footnote from *Triestman* that speculates that equal protection claims might arise under actual innocence scenarios, but which also

---

[15] Surratt did not raise any of his constitutional claims below, save for a reference in a supplemental brief to how the savings clause is Congress' way of ensuring that § 2255 "vindicate[s] the Suspension Clause." JA271. The Government raised the Due Process and separation-of-powers issues in their brief below, JA258, and the district court rejected both arguments. JA322; 326-27.

highlights the general rule that there is no due process right to collaterally attack a final conviction. *See* Surratt Br. at 35 (citing *Triestman*, 124 F.3d at 379 n.22). Similarly, with respect to the Suspension Clause, Surratt again relies on a footnote from *Triestman*, a case which expressly declined to consider a Suspension Clause challenge, and where the Second Circuit recognized the Supreme Court's reluctance to give the Suspension Clause an expansive scope. *See Triestman*, 124 F.2d at 378 n.21 (cited in Surratt Br. at 37).

Finally, although Surratt places great weight on use of the word "detention" versus conviction in § 2255(e), Surratt Br. at 15, myopic focus on that word begs the question, as all habeas petitions are brought by a prisoner who is detained. *See* 28 U.S.C. § 2255(a) ("A prisoner *in custody* under sentence of a court ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.") (emphasis added). The real question, of course, is which detention-related claims are cognizable, and in particular, the circumstances under which § 2255 relief is "inadequate and ineffective." Surratt's reading of the savings clause to cover his sentencing claim cannot be said to be plausible given this Court's repeated refusal to "extend[] the reach of the savings clause

to those petitioners challenging only their sentence." *Poole*, 531 F.3d at 267 n.7, and the unavailability of even § 2255 relief for challenges like Surratt's based on "legal classification of the predicate crimes," *Pettiford*, 612 F.3d at 284. The parties likewise ignore the implications of their argument that would make § 2241 relief for non-constitutional claims easier to obtain than § 2255 relief for constitutional claims. *See supra* Part II.A, at 36-41. This court should "resist attributing to Congress an intention to render a statute so internally inconsistent." *Greenlaw v. United States*, 128 S. Ct. 2559, 2568 (2008).

### C. Judicial Enforcement of Congressionally-Imposed Finality Constraints Does Not Deprive Surratt Of All Remedies.

Congress has decided to substantially limit the authority of federal courts to grant extraordinary relief in a multitude of cases where there may be strong policy reasons to intercede. To expand collateral relief every time a sentence was unfairly imposed would eviscerate the finality of criminal convictions, which is itself a valued social goal. *United States v. Addonizio*, 442 U.S. 178, 184 n.11 (1979) ("Inroads on the concept of finality tend to undermine confidence in the integrity of our procedures.").

65

Thus, this and other federal courts routinely decline to reach all sorts of issues on waiver grounds absent the actual factual innocence demonstration of a miscarriage of justice, although relief would otherwise be available. *See supra* Part II.C, at 44-52; *see also Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992) (listing noncapital cases where the Supreme Court rejected miscarriage of justice claims that were not based on actual factual innocence). But Congressionally-imposed limits on federal habeas review that protect societal interests in finality and ensure the proper deployment of judicial resources foreclose only judicial relief. *See Danforth v. Minnesota*, 552 U.S. 264, 291 (2008) ("It is fully consistent with a government of laws to recognize that the finality of a judgment may bar relief."). Other safety valves exist to address fairness concerns in cases like Surratt's.

The political branches have powers that go well beyond courts' limited authority to reopen final judgments. Congress could amend the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372 (2010), to make it fully retroactive, or to allow claims under that statute to trigger the savings clause. The Executive Branch, too, has alternatives. "Executive clemency has provided the 'fail safe' in our criminal justice system,"

*Herrera v. Collins*, 506 U.S. 390, 415 (1993), i.e., the President could commute Surratt's sentence, as he has done in several crack cocaine cases, JA327 n.13 (citing Charlie Savage, *Sentences of 8 Are Commuted in Crack Cases*, N.Y. TIMES, Dec. 19, 2013, at A1.

In sum, where the Executive Branch has concerns regarding the fairness of lawfully-imposed sentences, rather than attempt to expand the courts' jurisdiction at the Government's discretion, it must consider options that do not compromise Congressionally-imposed limits, conserve scarce judicial resources, and best serve the core interests of finality that AEDPA protects.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment of the district court.

Dated:  October 1, 2014                Respectfully submitted,


                                       s/ Steven H. Goldblatt
                                       Steven H. Goldblatt, Director
                                       Ruthanne M. Deutsch, Supervising
                                       Attorney
                                       Utsav Gupta, Student Counsel
                                       William Hornbeck, Student Counsel
                                       Meredith Wood, Student Counsel
                                       Appellate Litigation Program
                                       Georgetown University Law Center
                                       111 F Street, N.W., Suite 306
                                       Washington, DC 20001
                                       (202) 662-9555

                                       *Court-Assigned Amicus Curiae*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,688 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook, Size 14.

Dated:  October 1, 2014          <u>s/ Steven H. Goldblatt</u>
                                 Steven H. Goldblatt, Director
                                 Appellate Litigation Program
                                 Georgetown University Law Center
                                 111 F Street, N.W., Suite 306
                                 Washington, DC 20001
                                 (202) 662-9555

                                 *Assigned Amicus Curiae*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of October, 2014, I electronically filed the Sealed and Public versions of the foregoing Brief of Assigned Amicus.  I certify that the following attorneys are registered ECF participants for whom service of the Public Brief will be accomplished by the CM/ECF system:  Ann L. Hester, counsel for plaintiff-appellee; Anne M. Tompkins, counsel for defendant-appellant.  I further certify that on this day I served, by overnight mail, paper copies of the Sealed Brief to Ann L. Hester and Anne M. Tompkins.  Finally, a courtesy paper copy of the Public Brief was sent by overnight delivery to Jeffrey T. Green, counsel of record for amicus National Association of Criminal Defense Lawyers and Professor Douglas A. Berman ("NACDL").

<u>s/ Steven H. Goldblatt</u>
Steven H. Goldblatt, Director
Appellate Litigation Program
Georgetown University Law Center
111 F Street, N.W., Suite 306
Washington, DC 20001
(202) 662-9555

*Assigned Amicus Curiae*